Totte J.,
delivered the opinionof the court.
Tie bill was filed 13th April, 1848, in chancery at Fayette-viie, to recover possession of a .negro slave Sam.
The material facts are these: there was an execution in favor of John McGollom vs. Moses and Robert Buchanan for about $165, for which complainant Wm. Moffatt was originally liable — this execution was levied on the slave Sam, then probably in the possession of Robert Buchanan, and at and before the sale, which was on the 26th December, 1842, there was an agreement between complainant and Moses and Robert Buchanan to the following effect; Moses had in possession of Robert Buchanan, one hundred dollars in Alabama money, then at a discount of eleven per cent., which Moses agreed to let complainant have, and with the aid of this fund; said Robert was to buy in the slave and hold him in possession until complainant should pay to said Robert the balance on the execution and the discount oh the Alabama money, and then should deliver the slave to complainant. Moses was the son of Robert Buchanan and the son-in-law of complainant, who was old and destitute, but had been in better circumstances and had been the owner of the slave, and it was the wish of Moses Buchanan to assist his father-ip-law, that he might have some one to wait upon him. Robert Buchanan concurring in the same purpose, agreed to purchase the slave as before stated, and hold him subject to said agreement; and accordingly, on the 26th of December, 1842, the slave was bid for by said Robert and purchased at about $165, he being worth at that time about $400. The bill charges, that Robert Buchanan had re-purchased the slave from one Alfred Smith for the benefit of Moses Buchanan and with his funds, but this fact is not made out in the proof. There is a quit claim conveyance from Smith to said Robert, and it is probable from some imperfect admissions in the answer, that after the pur *371 chase from Smith, ¡4e slave was sometimes in possession of Moses Buchanan One of the witnesses (Alfred Smith) states, that in th summer of 1843, complainant demanded the slave of said I >bert in virtue of said agreement, saying,' that he could hav the money at any time, but said Robert refused to deliver Iv'n, stating as a reason, that the one hundred dollars befor< named, had been taken by garnishment, that is, as we und'/stand it, for the debts of Moses Buchanan. It is proved'ov another witness, that on the 27th February, 1844, compbiw^nt tendered to said Robert one hundred and fifty dol !■!'<, that he might take the amount due him on account of the purchase of the slave, and it seems, that the balance due d(.r crediting the one hundred dollars, was about sixty-five ^dollars and the discount before mentioned. But said Robert retained the slave until his (said Robert’s) death, on the 19th July, 1845, and Milton Buchanan, his administrator with the will annexed, has retained the slave in possession ever since.
Now the transaction is in effect, simply this — said Robert was to purchase and hold the slave for complainant, applying thereto the one hundred dollars already in his hands, and advancing for complainant the balance on the purchase, to secure the repayment of which, he was to retain the slave in possession until refunded by complainant. The price given, being merely the amount of the debt and less than half the value of the slave, is a circumstance in confirmation of the other proof, as it may be inferred, that other persons had a knowledge of the transaction and on that account, declined bidding at the sale.
The title was therefore, acquired and held by said Robert, under an express trust, the terms of which are to be seen in said agreement; and inasmuch as he was to hold it as indemnity for the money advanced, the trust is in nature of a mortgage. In Loyd vs. Currin, 3 Hum. R. 464, it was held, that if before a sale under execution there is an agreement, that the credi *372 tor shall acquire by purchase at the sale, ue legal title to the property, and hold it as security for his mou,y; such contract is a mortgage, notwithstanding he acquired he title, not by conveyance of the debtor, but by purchase at the execution sale. To the same effect is the case of English s. Tomlinson, S Hum. It. 378. The trust is express, where it is created by the act of the parties, and it may be either by worl or writing. Cook vs. Fountain, 3 Swanst. R. 585.
If this be the true construction of the agreement, ii is not true as argued, that complainant was under no obligaton to pay the balance of the money and take the slave : it was certainly in the power of Robert Buchanan, holding as a trus.°e and partly for his own benefit, to enforce complainant to con\ ply with his part of the agreement and to close the transact tion. Nor is it true, that the death of the slave would have been the loss of the trustee, his interest being merely a debt secured by holding the legal title.
As to the statute of limitations relied upon in defence; conceding that it will apply after the trustee has repudiated the trust, and asserted an adverse title in himself, and that fact made known to the cestui que trust, what then will be its effect in the present case? Regarding said Robert in the character of a trustee, he had no right to the slave as against the cestui que trust, but held him only as security for the money advanced. In the view of a court of equity the slave is to be considered as the property of the cestui que trust, subject to a lien for a debt, due in the present.case, to the trustee. The assertion of an adverse right to the slave was therefore wrongful and could be of no avail to divest the said Robert of his rightful character as trustee, and vest in him an absolute title to the slave, until after the lapse of the time limited by the statute; after such time, it v/ould have that effect.
Conceding that the adverse possession commenced in 1843, and there is no pretence that it commenced at an, earlier pc- *373 riod, yet as said Robert died on the 19th July, 1845, before the lapse of the three years, it had not then conferred upon him a right to the slave in his new character of absolute owner. And at his death, the title that he had, was his original title as trustee, and a security for his money. Such title as he had went of course to his personal representative, and as the adverse possession, for less than three years, had produced no change in the title, the representative would necessarily hold by the only title that had any existence, that is, in trust under the agreement oí the parties. The slave did not therefore come to the executor as assets of the estate, subject to be administered under the will. The law presumes his possession to be in conformity to the right, but if the executor set up an adverse claim, it is upon his own possession, and being wrongful, cannot connect itself with the wrongful possession of the testator, so as by lapse of time, to acquire, as executor, a title that had no existence, and was not assets in his possession at the death of the testator.
Norman vs. Smith, 1 Hum. R. 47, was decided upon the principle here stated. That case was a bill to recover the possession of a slave, and the defence was the act of limitation. The slave had been in the possession of Samuel G. Smith, under a claim of title, and at his death came to the possession of Thomas Smith, his executor. And the question was, whether the executor could connect his possession with that of the testator, so as to make out his defence upon the act of limitations, and it was held, that he could not. Green, J., in delivering the opinion of the court, observes that, “As the property in the slave had not been vested in Samuel G. Smith, the defendant does not hold him as executor, but is personally guilty of an unlawful detainer, for which he is liable in this suit. The present cause of action commenced with the possession of the slave by the defendant.” And referring to Newsom vs. Newsom, 1 Leigh’s R. 85, and Jones vs. Littlefield, *374 3 Yerg. R. 133, he further says: “These cases show, that an executor has no right to take into his possession a chattel, to which his testator was not entitled, though such testator had been in possession thereof, and consequently he cannot connect his possession with that of his testator.”
Without extending the discussion further, we are of opinion that the act of limitation does not apply in the present case. The decree of the Chancellor will be affirmed.